IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT HUNTINGTON

**K. MALIK FERGUSON,**

    **Plaintiff**

v.                      **CIVIL ACTION NO.** 3:20-cv-00761

**BARBOURSVILLE LODGE
NO. 2586, LOYAL ORDER OF
MOOSE, INC.; AND LORI KING,**

    **Defendants**

### COMPLAINT

Comes this day, K. Malik Ferguson, by his counsel, Michael J. Farrell and Farrell, White & Legg, PLLC and files this Complaint against Barboursville Lodge No. 2586, Loyal Order of Moose, Inc. ("Moose Lodge") for violation of W. Va. Code §§ 60-3-22 and 11-16-18 and related State Code of Regulations and Lori King ("King") in connection with her negligent, willful, wanton and reckless operation of her motor vehicle on the 28th day of July, 2020 as described below.

### JURISDICTION AND VENUE

1. Plaintiff is a citizen and resident of Tampa, Florida.

2. The Moose Lodge is a West Virginia corporation that is situate in and operates in Huntington, Cabell County, West Virginia

3. King is a citizen and resident of Wayne County, West Virginia.

4. In West Virginia, "Intoxicated" means "having one's faculties impaired by alcohol or other drugs to the point that physical or mental control or both are markedly diminished." 175 WVCSR 2-10

5. The automobile pedestrian collision that resulted in the traumatic amputation of Plaintiff's left leg occurred in the Southern District of West Virginia at Huntington, West Virginia.

6. The overserving of King with intoxicating alcoholic beverages occurred in the Southern District of West Virginia at Huntington, West Virginia.

**7.** This Court has venue regarding this case because King was operating her motor vehicle in Huntington, Cabell County, West Virginia on the 28th day of July, 2020 in violation of W. Va. Code § 17C-5-2 when she collided with Kevin M. Ferguson, a citizen and resident of Tampa, Florida.

## FACTUAL BACKGROUND

8. On the 28th day of July, 2020, King was a patron at the Moose Lodge during a period of time through approximately 6:45PM EDT.

9. On the 28th day of July, 2020, King had been a longstanding member of the Moose Lodge.

10. On the 28th day of July, 2020, King had to be a member of the Moose Lodge in order to enter and be served alcoholic beverages at the bar.

11. On the 28th day of July, 2020, King, as a longstanding member of the Moose Lodge, was well known to the management and staff of the Moose Lodge.

{F1765652.6}

12. On the 28th day of July, 2020, the Moose Lodge's employed personnel were very well acquainted with King because she ordered and consumed alcoholic beverages on the premises on a frequent, regular and persistent basis before July 28, 2020.

13. The State of West Virginia defines "intoxicated" as "having one's faculties impaired by alcohol or other drugs to the point where physical or mental control or both are markedly diminished." W. Va. C.S. R. §175-2-2.9.

14. On the 28th day of July, 2020, the Moose Lodge served King an excessive amount of alcohol that rendered her intoxicated while she was still present on the Moose Lodge premises.

15. On the 28th day of July, 2020, the Moose Lodge continued to serve alcoholic beverages to King after she became intoxicated on the Moose Lodge premises and until she exited the premises.

16. On and before the 28th day of July, 2020, King became intoxicated at the Moose Lodge to the point of exceeding the statutory blood alcohol limit imposed by law as a result of consuming too many alcoholic beverages.

17. On the 28th day of July, 2020, as a result of the Moose Lodge overserving King with alcoholic beverages to the point of causing King to become intoxicated while still on the premises of the Moose Lodge, the Moose Lodge knew that King left the premises in an intoxicated condition with the intent of driving herself to her residence located at 1019 Euclid Place in Huntington, West Virginia.

18. Notwithstanding the knowledge that King intended to drive herself on the 28th day of July, 2020 while intoxicated, the management and staff sold King an additional alcoholic beverage that was placed in a "Go-Cup" which was thereafter taken by King

from the Moose Lodge premises and partially consumed inside her automobile while driving in route to her residence located at 1019 Euclid Place in Huntington, West Virginia.

19.     On July 28, 2020, the Moose Lodge was a "retail liquor store". . . and as such was only licensed to sell alcoholic liquors that were to be consumed off premises in their "<u>original package</u>" . . . .W. Va. Code §§ 60-3-1 et seq., or W. Va. Code 60-3A-1 et seq. Emphasis provided.

20.     Neither W. Va. Code § 60-3-1 *et seq*. nor § 60-3A-1 *et seq.* authorized the Moose Lodge to sell alcoholic liquors in open unsealed cups for consumption off the premises.

21.     On the 28th day of July, 2020, the Moose Lodge was subject to compliance with the mandate set forth in W.Va. Code § 60-3-22(a)(3) that prohibited the sale of alcoholic beverages to individuals who were intoxicated.

22.     On the 28th day of July, 2020, the Moose Lodge had the reputation in the community of serving alcoholic mixed drinks that contained more alcohol than an average bar serves its customers. This practice was referred to as "pouring heavy."

23.     After the injury producing event in front of 1029 Euclid Place on the 28th day of July, 2020, King reported to the investigating police officer that the Moose Lodge had been "pouring heavy."

24.     On the 28th day of July, 2020, the Moose Lodge personnel who were responsible for selling alcohol beverages to King after she was intoxicated knew or should have known that she intended to drive herself in a vehicle that she owned from the Moose Lodge to her residence located at 1019 Euclid Place in Huntington, West Virginia.

25. Despite having the knowledge on the 28th day of July, 2020, that King was intoxicated at the time that she left the Moose Lodge, the Moose Lodge personnel did not arrange to make any effort to call a taxi, Uber, Lyft or other form of transportation that would have provided an alternative mode of transportation other than her privately owned vehicle.

26. Upon information and belief, before the 28th day of July, 2020, King had frequently used third party transportation provided by a private contractor to travel from the Moose Lodge and possibly other bars to her residence when she was too intoxicated to drive.

27. Had King been provided third party transportation on the 28th day of July, 2020 from the Moose Lodge to her residence at 1019 Euclid Place, Plaintiff would not have been permanently injured.

28. King drove her privately owned vehicle from the Moose Club to her residence at 1019 Euclid Place while intoxicated and impaired in violation of W. Va. Code § 17C-5-2.

29. On the 28th day of July, 2020, at approximately 7:10PM EDT, Plaintiff was lawfully standing in the yard in front of the residence situate at 1029 Euclid Place at which he was temporally residing with his grandmother in Huntington, Cabell County, West Virginia.

30. During the hours immediately before 7:10PM EDT on the 28th day of July, 2020, with the active negligent aid and assistance of the Moose Lodge management and servers who knew that she had become intoxicated, King unlawfully, negligently, willfully, recklessly and intentionally impaired and intoxicated herself at the Moose Lodge by consuming an excessive volume of alcoholic beverages in violation of West Virginia law.

31.     Before leaving the Moose Lodge, King was visibly intoxicated to anyone who observed her including the servers and bartenders employed by the Moose Lodge.

32.     When she left the Moose Lodge, King was visibly intoxicated to anyone who observed her including the servers and bartenders employed by the Moose Lodge.

33.     When she entered her privately owned vehicle after she left the Moose Lodge, King was visibly intoxicated to anyone who observed her including the servers and bartenders employed by the Moose Lodge.

34.     When she drove her privately owned vehicle to 1029 Euclid Place in Huntington, West Virginia, after she left the Moose Lodge, King was visibly intoxicated to anyone who observed her.

35.     When King entered the roadway designated as Euclid Place shortly before 7:10PM EDT on July 28, 2020, she was intoxicated in excess of the legal intoxication limit of 0.08% blood alcohol limit as imposed by West Virginia law. *See* W.Va. Code § 17 C-5-2 1(A)(c)

36.     W.Va. Code § 17 C-5-2 1(A)(c) provides: "Any person who drives a vehicle in this state while he or she is in an impaired state, and such impaired state proximately causes serious bodily injury to any person other than himself or herself, is guilty of a felony and, upon conviction thereof, shall be imprisoned in a state correctional facility for not less than two nor more than 10 years and shall be fined not less than $1,000 nor more than $3,000, and shall have his or her license to operate a motor vehicle revoked by the Commissioner of the Division of Motor Vehicles for a period of five years or for a period of time conditioned on participation in the test and lock program in accordance with § 17C-5A-3a of this code: *Provided*, That if the person has previously been convicted

under this section, the person shall have his or her license to operate a motor vehicle revoked by the Commissioner of the Division of Motor Vehicles for life or for a period of time conditioned on participation in the test and lock program in accordance with § 17 C-5A-3a of this code."

37. When King struck the parked car owned and occupied by Erica Foley ("Foley") at 7:10PM on the 28th day of July, 2020, she (King) was intoxicated.

38. Plaintiff had just exited as a passenger from the Foley vehicle when he was struck by King.

39. The left front and side of King's privately owned vehicle struck the rear and passenger side rear quarter panel of Foley's vehicle.

40. King then backed her vehicle up, drove over the curb and pinned Plaintiff's left leg to the tree.

41. Rather than back away from Plaintiff and render aid to him, King continued to accelerate her vehicle and continued to press Plaintiff's leg against the tree until the leg was irreparably damaged.

42. When she struck and severely damaged the left leg of Plaintiff on July 28, 2020, King was intoxicated as a result of having consumed an excessive volume of alcohol at the Moose Lodge.

43. After Plaintiff's leg was irreparably damaged, King then tried to flee the scene of the crash that permanently injured Plaintiff.

44. Residents of Euclid Place rushed into the scene of the crash and physically prevented King from fleeing the scene by banging on the windows of her vehicle and

ultimately hurling concrete blocks onto her windshield to cause her to surrender and exit the car.

45. All of these actions and injuries occurred within sight of her residence at 1019 Euclid Place.

46. King was intoxicated when she was escorted to the stoop of her residence.

47. King when intoxicated when Huntington Police Department Officer interviewed her.

48. King was intoxicated when the Huntington Police Department Officer administered the blood alcohol content test.

49. King flunked the blood alcohol content test on the 28th day of July, 2020 when she registered a 0.18 blood alcohol content.

50. King was arrested on the 28th day of July, 2020 and charged with Driving Under the Influence of Alcohol.

51. King was in possession of a "Go-Cup" of alcohol which was sold to her by the Moose Lodge when she was arrested on the 28th day of July, 2020.

52. At the time of her arrest, King was intoxicated as a result of having consumed an excessive volume of alcohol at the Moose Lodge.

### COUNT ONE
### NEGLIGENT VIOLATION OF WEST VIRGINIA CODE § 60-3-22(A)(3) BY THE MOOSE LODGE

53. Plaintiff incorporates by reference the factual allegations set forth in paragraphs 1 through 52 and incorporates the same herein.

54. During the month of July, 2020 and previously, King was a frequent patron of the Moose Lodge.

{F1765652.6}

55. During the month of July, 2020 and previously, the Moose Lodge personnel knew and understood that King would consume excessive amounts of alcohol to the point that she would become intoxicated.

56. During the month of July, 2020 and previously, the Moose Lodge personnel had a regular and habitual practice of continuing to sell alcoholic beverages to King after she had become intoxicated.

57. During the month of July, 2020 and previously, the Moose Lodge personnel knew that King left the Moose Lodge premises after she had become intoxicated.

58. During the month of July, 2020 and previously, the Moose Lodge management and service personnel knew that King regularly drove her privately owned vehicle after she left the Moose Lodge premises in an intoxicated condition.

59. On the 28th day of July, 2020, despite the foregoing actual knowledge, the Moose Lodge's management and service personnel negligently continued to serve alcoholic beverages to King after they knew or should have known that King was intoxicated in violation of in violation of W. Va. Code § 60-3-22(a)(3).

60. On the 28th day of July, 2020, despite the foregoing actual knowledge, the Moose Lodge's management and service personnel negligently sold King an open, non-sealed Go-Cup filled with the same alcohol as she was departing the premises even though they knew that such a sale was illegal.

61. The West Virginia regulations only authorize the sale of an "original package" for alcohol that is purchased at a retail outlet.

62. "Original package" means any closed or sealed container or receptacle used for holding alcoholic liquor or wine." *See* 175 W. Va. C.S.R. § 2-2.15.

63. The Moose Lodge and its agents, servants and employees had a common law and statutory duty not to negligently injure and maim to Plaintiff as a result of overserving King and causing her intoxication.

64. This cause of action constitutes negligence *per se* because the Moose Lodge violated W.Va. Code § 60-3-22(a)(3) by serving alcoholic beverages to King after she became intoxicated on July 28, 2020.

65. As a proximate result of the foregoing negligent conduct by the Moose Lodge and its personnel, Plaintiff sustained severe damage to his left leg which led to amputation and Plaintiff was otherwise seriously injured including but not limited to permanent disfigurement, permanent loss of enjoyment of life, temporary and permanent pain and suffering, temporary and permanent mental anguish, permanent loss of earnings and permanent loss of capacity to earn a living.

66. Plaintiff prays that judgment be entered on this Count in his favor in the amount of Ten Million Dollars ($10,000,000) for his compensatory damages.

## COUNT TWO
## INTENTIONAL ACT LIABILITY BY THE MOOSE LODGE

67. Plaintiff incorporates by reference the factual allegations set forth in paragraphs 1 through 66 and incorporates the same herein.

68. During the month of July, 2020 and previously, the Moose Lodge personnel knew and understood that King would consume excessive amounts of alcohol to the point that, if permitted and intentionally served alcoholic beverages to her to the point that her capacity to imbibe alcoholic beverages was exceeded, she became intoxicated.

69. During the month of July, 2020 and previously, including July 28, 2020, the Moose Lodge intentionally overserved King to increase its sales of alcoholic beverages and maximize its daily profits from the sale of alcohol beverages.

70. During the month of July, 2020 and previously, including July 28, 2020, the Moose Lodge personnel intentionally, regularly and habitually continued to sell alcoholic beverages to King after she had become intoxicated because she had sufficient financial resources to pay the daily tab.

71. During the month of July, 2020 and previously, including July 28, 2020, the Moose Lodge personnel, in reckless disregard of the foreseeable consequences, knew that King would leave the Moose Lodge premises after she had become intoxicated and drive herself in a privately owned vehicle to her residence.

72. During the month of July, 2020 and previously, including July 28, 2020, the Moose Lodge management and service personnel intentionally intoxicated King on multiple occasions as part of an artifice, scheme and device to increase alcohol sales and tips even though they knew that King regularly drove her privately owned vehicle on the streets of Huntington after she left the Moose Lodge premises in an intoxicated condition.

73. On the 28th day of July, 2020, the Moose Lodge intentionally sold alcoholic beverages to King in a Go-Cup which it knew she would take with her on the drive home and continue to imbibe from it until and after she reached her residence.

74. On the 28th day of July, 2020, despite the foregoing knowledge, the Moose Lodge's management and service personnel intentionally, willfully and recklessly continued to serve alcoholic beverages to King after they knew that King was intoxicated in violation of  in violation of W. Va. Code § 60-3-22(a)(3).

75. The Moose Lodge and its agents, servants and employees had a common law and statutory duty not to negligently or intentionally injure and maim to Plaintiff as a result of overserving King and causing her intoxication.

76. As a proximate result of the foregoing willful, wanton, reckless and intentional misconduct by the Moose Lodge and its personnel, Plaintiff sustained a serious injury that resulted in the amputation of his left leg and Plaintiff was otherwise permanently seriously injured including but not limited to permanent disfigurement, permanent loss of enjoyment of life, temporary and permanent pain and suffering, temporary and permanent mental anguish, permanent loss of earnings and permanent loss of capacity to earn a living.

77. Plaintiff prays that judgment be entered on this Count in his favor in the amount of Ten Million Dollars ($10,000,000) in compensatory damages and Fifty Million Dollars ($50,000,000) in punitive and exemplary damages.

## COUNT THREE
### NEGLIGENCE BY LORI KING

78. Plaintiff incorporates by reference the factual allegations set forth in paragraphs 1 through 77 and incorporates the same herein.

79. On the 28th day of July, 2020, King exited the Moose Lodge and entered her privately owned vehicle.

80. Prior to the 28th day of July, 2020, King had consumed a sufficient volume of alcohol beverages to be intoxicated immediately prior to entering her private owned vehicle doe travel to 119 Euclid Place, Huntington, West Virginia.

81. Prior to the 28th day of July, 2020, King had regularly patronized the Moose Lodge for the purpose of consuming alcoholic beverages.

82. Prior to the 28th day of July, 2020, King had regularly become intoxicated at the Moose Lodge.

83. Prior to the 28th day of July, 2020, King had regularly become intoxicated at the Moose Lodge and drove to her residence at 119 Euclid Place, Huntington, West Virginia in an intoxicated condition.

84. King had a common law and statutory duty not to negligently injure and maim to Plaintiff as a result of her intoxication.

85. On the 28th day of July, 2020, King acted in a negligent manner when she drove her automobile while intoxicated from beverages obtained at the Moose Lodge and drove to her residence at 119 Euclid Place, Huntington, West Virginia in an intoxicated condition.

86. On the 28th day of July, 2020, as a proximate result of King's negligence, King's automobile struck the Foley vehicle while it was lawfully parked and stationary and then caused her vehicle to strike Plaintiff as he was exiting the Foley vehicle.

87. As a proximate result of the foregoing negligent conduct by King, Plaintiff sustained serious injury that resulted in the amputation of his left leg and Plaintiff was otherwise seriously injured including but not limited to permanent disfigurement, permanent loss of enjoyment of life, temporary and permanent pain and suffering, temporary and permanent mental anguish, permanent loss of earnings and permanent loss of capacity to earn a living.

## COUNT FOUR
## TORT OF OUTRAGE AGAINST MOOSE LODGE AND LORI KING

88. Plaintiff incorporates by reference the factual allegations set forth in paragraphs 1 through 87 and incorporates the same herein.

89. On the 28th day of July, 2020, King went to the Moose Lodge for the express purpose of intoxicating herself beyond the legal limit of 0.08 BAC.

90. On the 28th day of July, 2020, King intentionally consumed sufficient alcohol to cause herself to be intoxicated to a level of 0.18 BAC, more than twice the legal blood alcohol content authorized by the State of West Virginia.

91. This cause of action against King and the Moose Lodge constitutes a tort of outrage because the conduct by both shocks the conscience

92. The conduct by the Moose Lodge shocks the conscience and violates W.Va. Code § 60-3-22(a)(3) by serving alcoholic beverages to King after she became intoxicated on July 28, 2020.

93. King intentionally drove her privately owned vehicle in a willful, wanton, reckless and intentional manner when she knew that she was intoxicated on July 28, 2020 at and after her departure from the Moose Lodge.

94. King intentionally drove her privately owned vehicle under the influence in violation of W. Va. Code § 17C-5-2 when she knew that she was intoxicated on July 28, 2020 at the time that she left the Moose Lodge.

95. The Moose Lodge, its agents, servants and employees, and King had a common law and statutory duty not to injure and maim Plaintiff and other foreseeable victims of the foreseeable acts by King as a result of her intoxication.

96. As a proximate result of the foregoing intentional, willful, want, reckless and outrageous conduct by King, Plaintiff sustained serious injury that resulted in the amputation of his left leg and Plaintiff was otherwise seriously injured including but not limited to permanent disfigurement, permanent loss of enjoyment of life, temporary and permanent pain and suffering, temporary and permanent mental anguish, permanent loss of earnings and permanent loss of capacity to earn a living.

97. Plaintiff prays that judgment be entered on this Count in his favor in the amount of Ten Million Dollars ($10,000,000) in compensatory damages.

## COUNT FIVE
## WILLFUL, WANTON, RECKLESS AND INTENTIONAL MISCONDUCT BY LORI KING

98. Plaintiff incorporates by reference the factual allegations set forth in paragraphs 1 through 97 and incorporates the same herein.

99. King intentionally consumed alcoholic beverages on July 28, 2020 at the premises of the Moose Lodge in excessive quantities such that she became intoxicated at the Moose Lodge.

100. King knew that she was intoxicated while she was still present inside the Moose Lodge and before she exited the premises on July 28, 2020 because she engaged in one or more of the following signs of intoxication: loud speech, boasting, drinking alone, drinking too fast, slurred speech, ordering doubles, buying rounds, stumbling and/or crude behavior.

101. King displayed one or more of the signs of intoxication including slurred speech, lack of balance when walking and blurry eyes inside the Moose Lodge before she ordered

{F1765652.6 }

and took possession of the open, non-sealed "Go-Cup" filled with an alcoholic beverage that she purchased and received from the Moose Lodge.

102. King intentionally purchased an open, non-sealed "Go-Cup" filled with an alcoholic beverage as she was leaving the Moose Lodge on July 28, 2020 in a state of intoxication.

103. While intoxicated, King communicated to the management and/or service staff of the Moose Lodge her intention to drive her privately owned vehicle to her residence before she exited the Moose Lodge premises on July 28, 2020.

104. King intentionally drank from the open, non-sealed "Go-Cup" filled with an alcoholic beverage as provided by Moose Lodge while driving from the Moose Lodge to Euclid Place on July 28, 2020.

105. King intentionally increased her level of intoxication as she drank from a "Go-Cup" filled with an alcoholic beverage as provided by Moose Lodge while driving from the Moose Lodge to Euclid Place on July 28, 2020.

106. King exacerbated Plaintiff's injury by continuing to "rev the engine" of her privately owned vehicle in an effort to keep Plaintiff pinned against the tree while her vehicle exerted unrelenting pressure against the leg until its amputation became inevitable.

107. King attempted to flee the scene of her vehicle striking and then pressing against plaintiff's leg in a hit and run fashion and would have succeeded but for the intervention of the Euclid Place neighbors.

108. At all times described in this Count, King was intoxicated as a proximate result of having consumed alcoholic beverages purchased at the Moose Lodge.

109. King voluntarily submitted to a breathalyzer immediately after the arrival of the police at the scene on Euclid Place.

110. The reading on the breathalyzer that analyzed King's breath was 0.18 BAC.

111. The 0.18 BAC was more than twice the legal limit authorized by the West Virginia Code.

112. The Moose Lodge and its employees and King had a common law and statutory duty not to injure and maim Plaintiff and other foreseeable victims of the foreseeable acts by King as a result of her intoxication.

113. As a direct and proximate result of the foregoing conduct by King, Plaintiff sustained a serious injury that resulted in the amputation of his left leg and Plaintiff was otherwise seriously injured including but not limited to permanent disfigurement, permanent loss of enjoyment of life, temporary and permanent pain and suffering, temporary and permanent mental anguish, permanent loss of earnings and permanent loss of capacity to earn a living.

114. Plaintiff prays that judgment be entered on this Count in his favor in the amount of Ten Million Dollars ($10,000,000) in compensatory damages and Fifty Million Dollars ($50,000,000) in punitive and exemplary damages.

**COUNT SIX**
**RESTATEMENT OF TORTS 2d OF TORTS § 876 "PERSONS ACTING IN CONCERT**

115. Plaintiff incorporates by reference the factual allegations set forth in paragraphs 1 through 114 and incorporates the same herein.

116. As owner of the Moose Lodge, the management of the Moose Lodge controlled the method, manner and quantity by which its servers and bartenders served alcoholic beverages.

117. All persons engaged in the process of receiving orders for alcoholic beverages at the Moose Lodge on July 28th, 2020, were acting within the scope and course of their employment when they served and continued to serve alcoholic beverages to King during the time she was a patron at the Moose Lodge.

118. King was overserved with alcoholic beverages at the Moose Lodge on the 28th of July, 2020.

119. The Moose Lodge and its employees had a common law and statutory duty not to injure and maim Plaintiff and other foreseeable victims of the negligent and/or intentional acts by King as a result of her intoxication.

120. But for the concurrent acts by the Moose Lodge, its agents, servant and employees and King, the injury to Plaintiff would not have occurred.

121. As a direct and proximate result of the foregoing conduct by the Moose Lodge, its agents, servants and employees and King, Plaintiff sustained a serious injury that resulted in the amputation of his left leg and Plaintiff was otherwise seriously injured including but not limited to permanent disfigurement, permanent loss of enjoyment of life, temporary and permanent pain and suffering, temporary and permanent mental anguish, permanent loss of earnings and permanent loss of capacity to earn a living

**PLAINTIFF DEMANDS A TRIAL BY JURY**


DATED: _____, 2020

{F1765652.6}

**K. MALIK FERGUSON**

**BY COUNSEL**

   /s/ Michael J. Farrell_____
Michael J. Farrell, Esquire (WVSB: 1168)
**Farrell, White & Legg PLLC**
**THE FARRELL BUILDING**
P.O. Box 6457
Huntington, WV 25772
Phone: (304)522-9100
Fax: (304)522-9162
Email: mjf@farrell3.com

{F1765652.6 }